Good morning. Good morning, Your Honor. May it please the Court, I'm Justin Nematseda of Nematseda PLLC, representing plaintiffs in the proposed class. I would like to reserve five minutes for rebuttal. Your Honor, plaintiffs plausibly allege negative tying. That is a violation of Sherman Act Sections 1 and 3, under either of the per se rule of reason as a quick look standard, and the lower threshold under Clayton Act Section 3, and the alleged exclusive dealing, that is a violation of Sherman Act Sections 1 and 3 and Clayton Act Section 3. These two alleged anti-competitive actions, in addition to the alleged self-preferencing, which is plausibly alleged in totality, violates Sherman Act Section 2, and all these actions violate California unfair competition laws. I would like to focus my argument on two of the components here as to whether the Google Maps Terms of Service actually effectuate the negative tie and coercion. That's not an indication of the order I think of the rest of the arguments. It's really in part because I want to make sure I have enough time to cover that. Also, it's a bit unclear whether the decision even found that there was no relevant markets nor market power. Of course, if I have time, I want to address those and all the other points. For the ease of everyone's review, I am going to be referring a lot to what is in the record as 3ER324. It's to the Second Amended Complaint, paragraphs 202 to 203, and those are sequential versions of the Google Maps Terms of Service. It is Google Maps Terms of Service. So let's focus on what the term, and it's Google Maps Terms 323E. Your Honor, at points in the decision, it found that this restriction is only a one-way tie, meaning it's only Google's Places APIs and Routes APIs that cannot be used with Maps. That is contradicted by the language of the terms. If one looks to the examples of that term, example two is display street view imagery, that's a Maps API with other content. And example three, to link a Google Map to non-Google Maps content, again, the tying product is a Maps API. And the negatively tied products are Places APIs and Routes APIs. So does the whole claim turn on the bold, italicized portion of what you're referring to, or is there other parts of the Terms of Service that you're relying on? Not necessarily, Your Honor. Of course, the example three, link a Google Map to non-Google Maps content, that is an express example of what we allege. But in totality, we're alleging that the terms considered include the forbiddance of using Google's Maps APIs with Places Routes APIs. That it's the verbs link and use, if you look at that whole section. Your Honor, the court, the decision below totally ignored, let alone assessed, plaintiff's allegations of wanting to link Google's Maps APIs with Places and Routes APIs. Plaintiff's Dream and Getify allege them at several points in the complaint. Those allegations are plausible. They need to be accepted as true. Google just nitpicks other portions of the complaint where the plaintiffs may have used different verbiage. What are the specific allegations about linking in the complaint that you would point us to? So Your Honor, in 3ER405 paragraph 549, Getify alleged that as reviewed, assessed and searched for Places APIs and Routes APIs from competitors, including without limitation, OpenStreetMaps, a free provider, Mapbox, USG, 51 Degrees and TeleNav. And Getify still wants to use and link Places APIs and Routes APIs from those competitors with Google Maps APIs that Getify has used during the class period. There is also paragraph 554. There's paragraph 556. There's paragraph 563, 568. And for Dream, there's paragraphs 527, 532 and 536. Those are some examples. Google admitted in the briefing that they're not moving to strike any of plaintiff's allegations. So that alone is reversible error just merely on the independent link. Then if we think more expansively on use, which plaintiffs do allege, let's look at the terms here. So is link a form of use? It is, Your Honor. But your position is use is broader than link? Absolutely, Your Honor. We presented Webster definitional comparisons that envelope link under use which were not imposed. There were decisions cited of the broadness of use. Plus, if we look to the language itself, Google states use as the introductory term followed by a for example which link follows under, necessarily showing that link is a part of use. Now, defendants in the brief try to limit link to a hyperlink. That's not the only way to use link. It is nowhere in the terms and it's outside the record. If we focus on use, Your Honor. What else does it mean, then? What else does link mean? So link means hyperlink at minimum, but what else do you think it would mean? It would mean pretty much to couple or connect by or as if by a link, to become connected by or as if by a link. So it's not such a narrow term. It's a broad term itself. But if we go to use as well, link is, for example, of use. On top of that, Your Honor, expressly in the examples, the forbidden pairing of Google's Maps APIs and the negatively tied Places and Routes APIs is a forbidden example there. The examples are not exhaustive. And what clearly shows this is even in the decision, it states the terms clearly showed and Google admitted that Routes APIs is a tying product. Let's read the terms. Nowhere in those terms as examples do Routes APIs showed up. So if these examples are exhaustive and Routes APIs showed up, that contradicts the position that even the judge found and Google point out that, yes, Routes APIs are a tying product. Although plaintiffs weren't required to, we attempt to harmonize the language. The term non-Google Maps would refer to any of competitors' Maps APIs, Places APIs, and Routes APIs. So the theory here is based just on the terms of service. Is there any other allegation about things that Google has said or done that give further content to this theory in terms of why your clients believe they're in a tying situation? There are, Your Honor. There were general allegations of threats on developers throughout the complaint that we allege there is the chilling effect that we have alleged that the judge ignored. There is a chilling effect off of the terms of service. In other words, your clients are reviewing the terms of service and allege that this is chilling them. Is there other allegations about things that Google has said or done that would lead to that chilling effect? Well, the chilling effect to my clients is that the terms and how they read it, and it's generally that someone doesn't want to cross paths with Google. If they're reading something, it's Google. So, Your Honor, I do want to point out that this term, non-Google Maps, pointing to all of competitors' other maps, they're consistent to other terms of service that we pointed out. Terms of service 3.2.2A1, 3.2.2A3, and Term 14, where Google itself is referring to Google Maps broadly to all of its Maps APIs, Places APIs, and Routes APIs. If we look at the succession of the terms, you see the introductory sentencing in the prior term and the later term did not change, saying no use with non-Google Maps. But in the secondary term, Google ads link a Google Map to non-Google Maps content. They're expressly adding the example of can't user link Google's Maps APIs with Places or Routes APIs. But they don't change the prior introductory point of no use with Google Maps. That shows that even according to Google, non-Google Maps means non-Google Maps content. Do you want to address the district court also talked about coercion. Do you want to address that? Absolutely, Your Honor. That is the second point I want to address. Firstly, Google and the decision incorrectly insinuate that if there are other options to the tying product, you can't have a tying claim. That's wrong. No one mandates 100% market share. There's permission to be other options. Secondly, in terms of the tying product, there are a few alternative ways someone can allege the sufficient economic power. One is, you could allege market monopoly power, even a lower standard for the tying product. The other way is a desirable product. The decision only addressed the alternative angle of the desirable Maps APIs. They did not address the alternative angle of the monopoly power allegations, which is one way to prove. And then on top of that, Your Honor, in the alternative, although, yes, there may be competitors that offer Maps APIs that are better than, it does not mean that you automatically lose on desirability. Because in the alternative, we do allege that regardless of other competitors offering Maps APIs that may be better, the plaintiffs in the class... They are better, actually. And I'm looking at 17. There are competitors to Google Maps that offer Places APIs and Routes APIs of comparable, if not better quality, and which are materially cheaper. Yes. Those are the tied products. So it's not required that even if competitors offer Maps APIs that are better, we still allege an alternative that plaintiffs still cannot avoid Google's Maps APIs in totality because Google Maps has data advantages. One of the body of data advantages are Google Maps is a presumption on all mobile phones on Android. And that would help a developer because when they're developing an app, the fact that the Maps APIs, for example, are presumptions on mobile, it makes the application of the development easier. On top of that, Google Maps has data advantages through the sharing of the data with the penalty of other Maps. Even companies such as Microsoft admitted that Google has data advantages. I do want to also note that when it comes to the coercion is to the tied products. And that coercion can be shown in the alternative of either an express tie or further threats. Both are not required. We allege the tie in the terms of service. That suffices it. When you have monopoly power, plus the language in the terms effectuating the tie, that satisfies that element. Because nothing it's not required that plaintiffs call Google or get on the phone with Google's lawyers as if they could and ask, hey, Google, we understand the terms be this. Can we do this? Does this violate it? That's not required. In fact, to require that rewards bad behavior, rewards a plaintiff violating the terms to see if there is a threat. But if the terms express the negative tying, that is sufficient. There is no additional requirement of threats. Do you want to save any time for rebuttal? Yes. Okay. Thank you. Good morning, your honors. May it please the court, David Kiernan on behalf of Google and Alphabet. One thing I want to address to clarify is Google has not conceded that the routes API is a tying product. I heard that from my friend, but Google has not admitted that. What's at issue here is Google Maps APIs as the tying product. And I think the key place to start on this appeal is what the plaintiffs say they want it to do. And it's the same paragraphs that the plaintiffs outlined. Paragraphs 533, 536, with respect to Dream Big, and then he mentioned several paragraphs with respect to Getify, which is a copy and paste of what's there for Dream Big. What the plaintiffs state they want to do is to display or use a competitor places or routes APIs with or near a Google Map. And this is key on this one digital screen, whether it be an app or website. That's what they claim they want to do. They want to take non-Google routes, non-Google places, put on the same screen with a Google Map. They are permitted to do that. We've stated that in the district court three times in our briefing. We stated in open court at oral argument. We've stated in our briefs on appeal. They can do that. The Google terms of service do not prohibit plaintiffs from doing that. The plain language of that provision does not prohibit them from doing it. So what is prohibited, the link? You have to start, Your Honor, with the title. It's the plaintiffs and developers cannot use the Google mapping APIs with a non-Google Map. The prohibition itself states customer will not use the Google Maps core services, which is defined to mean Google Maps APIs, routes APIs, and Google places APIs, with or near a non-Google Map. And then it provides examples of that, of what's prohibited. The examples can't expand what the general prohibition is within that section. And if you look at the examples, the first example is you cannot display or use places content on a non-Google Map. Plaintiffs don't want to do that. They don't want to use a non-Google Map. They're not asking to put The second one that counsel for the appellants outlined, display street view imagery, which is a Google Maps API, and non-Google Maps on the same screen. They don't want to do that. The third is link a Google Map, which means hyperlink, to non-Google Maps content or a non-Google Map. They don't want to hyperlink a Google Map to non-Google Map content or a non-Google Map on some separate screen. They want to take non-Google routes APIs or non-Google places APIs and put on the same screen with a Google Map. They can do that. And this is why they have brought forward not a single instance, not one, of Google ever interpreting this provision the way that they're interpreting it, ever enforcing the way that they say it's or that they're interpreting it. And this is despite having three opportunities to amend the complaint. It would not have been hard to find. The plaintiffs themselves could have called up Google, could have emailed Google, could have chatted with Google. Can we do this? And the answer would have been the same that we put in our briefs and the same that we've said in open court. The answer is yes. They have found no other developers that are laboring under the same misinterpretation of the contract. And what I heard from the appellants is, well, they don't have to do more. They can read the terms of service, and if they misunderstood it, that's enough. Twombly asks for more than that in an antitrust case. They make it very clear that they would argue what is possible. What does, when it says link a Google map to non-Google maps content or a non-Google map, walk through what you understand that to both permit and to disallow? So it's permitted to have non-Google map content APIs with or near a Google map. That's permitted. What's not permitted is taking a customer, creating a link that takes a customer from a Google map, hyperlinking to something else, a mapping API, a non-Google map or a non-Google map API. And that's because, and it's stated right at the top of the provision, it's to avoid confusion. So you have to read that prohibition, the example in III with the purpose which is to bring a confusion, as well as the express prohibition. Customer will not use the Google maps core services with or near a non-Google map. So you can't take somebody from Google maps API, take them out of it, and put them into, let's say, a non-Google map like an Apple map or Microsoft Bing map that would confuse the customer to think they're still within Google maps. And they're not asking to do that. That's the critical piece. The other thing What if they were asking to do that? What happens then? Because they seem to be saying we are asking to do that. We could look at the complaint and evaluate whether that's true or not. But let's assume that's what they're asking to do. Then what? Two points, Your Honor. First, their complaint does not allege that. And what the plaintiffs here have not said that they want to take someone out of Google maps and take them to hyperlink to something else. They've been very express. They want to stay on the Google map. And paragraph 536 is critical on this point. In paragraph 536, they state they don't want to take a customer out of the screen because that would destroy the customer experience. They want to stay on the same screen and the same app as a Google map. So they are not, just to be clear, they are not asking to link away from a Google map. It's the opposite. And they made that very clear. If they were, and that's prohibited, then that leads us to coercion, market power, which they have failed to allege with sufficient well-plaid facts. But we never get to coercion, market definition, or market power because the time condition does not exist. They have no support for it. With respect to the chilling effects, the only facts that they've alleged is the TOS, the terms of service. They don't have any facts allege that any developer, as I mentioned, is laboring under this misinterpretation of the terms of service or that they haven't otherwise, or that they're otherwise following the plaintiff's interpretation. The plaintiffs simply have done no investigation on this piece. They don't allege any facts about They don't allege any facts about whether there are websites that have non-Google places, non-Google maps with a Google map. They didn't do any investigation whatsoever. They focused entirely on the language of the terms of service. Now, Your Honor, I would like to just spend a moment on coercion. Our argument on coercion is that it undermines the plausibility that there is a negative tie with respect to these plaintiffs. They allege that there are 12 or so competing maps providers that provide competing maps APIs that are of better quality and cheaper than Google maps. They don't explain why they didn't choose the non-Google map APIs, why other developers would not choose the non-Google maps APIs. It makes their allegations that they were coerced or other developers were coerced as completely implausible. They need to allege something. Whether Google maps APIs was a must have, there was some reason why they had to choose Google maps APIs over the competing products that they concede are of either equal or better quality and cheaper. Your Honor, unless there are additional questions for me, we'll rest on the papers. Okay. Thank you very much.  Your Honor, there are really five quick points I want to make. The assertion that the only forbidden link is between a Google maps, a hyperlink to a separate app contradicts the language of the forbiddance, because in the language, the prohibitions are within the same customer application. So if that's the only forbidden thing, that makes no sense, because that link is outside the customer application. So it's within the customer application. Two, our allegations are also supported by the House Antitrust Report, the Germany Federal Antitrust Decision, and even testimony from a Mapbox founder where it's not just link. It's a prohibition in general of using any of Google's digital mapping APIs with other competitors' maps, places, or routes APIs. That is not conclusory. It's based on an investigation where they interviewed witnesses. They assessed documents from Google. Even at point states in the Germany issue, they assessed comments from Google to the decision. They still made that founding. There is no issue of customer confusion or quality, because plaintiffs adequately alleged that the lack of competition has resulted in Google maps having poor quality. And that's even with support from the House Antitrust Report. Google has not opposed those allegations in the briefing. We have not alleged that there are 12 competitors just within digital maps APIs. We allege that there are at least 12 competitors across the spectrum of maps APIs, places APIs, and routes APIs. And again, just because some competitors may offer better maps APIs in some sense, still plaintiffs allege, and the law allows that there is monopoly power, and there's still data advantages that plaintiffs cannot avoid mapping APIs in totality. And that is consistent with the court's finding in INFORM, part of the Google Digital Advertising Action, where they allege that even though the ad exchange, the mapping, tying product was not the best product out there, there was still, and even though plaintiffs purchased other tying products, there was still coercion because of the monopoly power and strength of the ad exchange that plaintiffs could not avoid and had to purchase. We've let you go a little over your time, but why don't you wrap up. Let me first see if I have questions from colleagues. Why don't you go ahead and just briefly wrap up. In terms of relevant markets, the points that Google makes more or less, and their interpretation of the law more or less would mean that there could never be a relevant market with more than one product. Because if the products are purchased together, they're complements. It can't be a market. But if you want to allege more than one product, they all need to be purchased together. Those two angles contradict each other. That's a factual issue. We have alleged that within each of the maps APIs, places APIs, and routes APIs, the APIs are substitutes of each other. We've alleged that. Well, it's a factual issue, and there's nothing on the face of the complaint that shows you can't allege that. In terms of monopoly power, we have alleged direct demonstrations of monopoly power, price increases to the tune of 1,400 percent, 200 times, 20 times. And as Ninth Circuit law shows, in a digital — when you're dealing with digital markets, the same bounds of alleging both increased prices and decrease in quantities — We've let you go a little over your time, so I want to just thank you for your presentation this morning. Thank you, counsel, for appearing here today. We thank opposing counsel as well. And this case is submitted. Thank you, Your Honor. Thank you.
judges: THOMAS, BRESS, MENDOZA